At this term, the following opinion was rendered :
Kirkpatrick, C. J.
John Ilardenburgh, as sheriff of Somerset county, and Peter Dumont, together with these defendants, as sureties, on the 15th of October, 1791, gave bond to the State of Ncw-Jersey, for the faithful execution of that office, in the penalty of £6000.
In September Term, 1797, judgment was entered on this bond in the Supreme Court, on the application of Thomas Irwin, and others. Since that time Ilardenburgh and Dumont have deceased. This is a motion to take out execution on that judgment against the defendants, as surviving obligors, in favor of Garret Tunison, surviving executor, &c. of Cornelius Tunison, sen. deceased. It is grounded on the act of March, 18, 1796, entitled an act concerning sheriffs; and prays an execution for £555 0 11, which sum, it is said, the said Ilardenburgh made of the sales of the estate of the said Cornelius Tunison, over and above the amount of the executions in his hands, and that he has neglected or refused to refund and pay back the same.
It appears from the documents and proofs exhibited before the court, that Ilardenburgh was elected sheriff of Somerset county in the month of October, in the years 1785, 6 and 7; and again in the same month in the years 1791, 2, 3; that during the first three years, several executions came to his hands against the said Cornelius Tunison; that during the year commencing in October, 1791, one only came to his hands against that defendant, to wit, one at the suit of Robert Henry; and that the said execution at the suit of Henry, was recorded on the 27th December, 1791, and therefore could not have come into his hands until that day.
It further appears, that the sale of the estate, the proceeds of which are said to have been detained by the sheriff, was made on the 17th of January, 1792, only [*] twenty-one days after the execution of Henry came to his hands. The sale, therefore, could not have been made upon this execution. The law did not admit of it. It required a public *260 advertisement of two months at least, to justify such sale.
To me, therefore, it is manifest, that the sale must have been made on one, or all, of the executions received in the former years. Now, by virtue of which commission was this done ? Was it done by virtue of that of October, 1791? Certainly not. Let us suppose, for a moment, that instead of Hardenburgh, John Denn had been elected and commissioned to be sheriff of that county in October, 1791. Hardenburgh would have done just the same thing that he has now done. According to universal practice and experience, he would have gone on to finish the business which had come into his hands, and which he had begun during his year.— He would have sold the land, he would have received the money. Who, then, would have been answerable for this default ? The securities of John Denn ? No. The securities for the faithful performance of the duties of the commission under which the act was done, under which the sale was made, under which the money came into his hands.
In the case that I have put, what could John Demi have done? Could he have sold on the 17th of January, 1792, under this execution ? No. Could he have demanded or received the surplus of the money arising from the sale, from Hardenburgh, beyond the amount of execution in his hands ? No, no more than a mortgagee, who might have had a mortgage upon the land, could have received that surplus. He was only an incumbrance. Hardenburgh was the agent of the law. He alone, in that case, would have been authorized to sell. He alone would have been authorized to receive the money, if he liad sold clear of incumbrance, (if this can he done) after paying the incumbrances, of which this execution in the hands of John Denn would have been one, he would have been obliged to return the [*] surplus to the defendant; and if he had failed in this, his sureties for that year, under the commission for which lie then acted, would have been liable; but never those of John Denn.
Now that Hardenburgh himself came in, in 1791, does not at all alter the nature of the case. The sureties of Hardenburgh in 1791, are no more liable for the performance of the duties of the commission of 1785, 6, or 7, than the sureties of John Denn would he in the case which I have put. (a)
I am, therefore, of opinion, that the present applicant has failed in his case. He has at least hit upon the wrong year, the wrong bond, the wrong men.
*261 Again. By the statute of limitations, passed February 7, 1799, it is enacted “ that any prosecution thereafter to be had, or commenced upon any sheriff’s bond, heretofore given, shall in no wise operate against the sureties, unless such prosecution shall be had or commenced within six years after the passing of the act.”(a)
It has been said in the argument, that this act does not apply, because the action on that bond was actually commenced and judgment entered before it was passed. And that all persons interested have a right to come in under that judgment.
I observe that in the penning of this act, great caution seems to have been used. In the first section it says, all actions of trespass quare clausum fregit, &c. shall be commenced and sued within six years; in the second section, all actions of trespass for assault, &c. shall be commenced and sued within four years; and in the third, all actions upon the case for words, &c. shall be commenced and sued within two years.
But when it comes to speak upon this subject, the phraseology is quite changed; it is such as seems to me to be intended to meet this case. It says that any prosecution thereafter to be had or commenced on sheriff’s [*] bonds, &c. in order to affect sureties, shall be within six years after the passing of the act.
Any prosecution ! Now, what is a prosecution ? It is not an action, it is not a suit; none of our books confound it with those two words. It is the following up or carrying on of an action or suit already commenced, until the remedy be attained. (b) Here the State in 1799, obtained a judgment for the benefit of all concerned, so far as the penalty of the bond would go. Any person aggrieved, as the law then stood, bad a right to come in and pursue it, or if you please, prosecute it, by assessing his damages, taking out execution and levying his money, at any time within twenty years.
But then the Legislature step in, and shorten this time.— They restrain it to six years, so far as it concerns the sureties ; and it seems to me, upon the most just and reasonable principles.
Here, then, this prosecution, this motion to assess damages and take out execution, has not been had or commenced w ithin the six years. If, therefore, I am correct in my understanding of the term, prosecution, (and it seems to me to have been sought for, for this very purpose,) I should be of opinion, that the application comes too late.
*262 Besides. As to the reason of the thing. It was certainly-intended by the Legislature to give a reasonable time to all interested to make their demands, and if they neglected so to do, that the sureties, who were innocent men, should be entirely exonerated. But if the mere entry of judgment upon one of these bonds for the most petty default, should be construed to let in all claimants for whatever sums they might make demand, and at whatever distance of time, the act would become in a great measure nugatory. The estates of sureties would be bound, would be liable to be wrested from them and their posterity, at almost any distance of of time, without the possibility of their finding out the incumbrances, or securing themselves against their [*] principal. The design of the Legislature would be defeated.— On both these grounds, I think the applicant must take nothing by his motion.
Rossem. J. and Pennixgox J. agreed with the Chief Justice on the first point; but gave no opinion on the statute of limitation, having made up their opinions on the first point, which settled the question. — Motion refused.

 Vide 7 Halst. 116.

 Rev. 410,

 Vide 6 Halst, 321.